IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JEFF ADAMS, | : |
| Plaintiff | : |
| VS. | :     **1 : 04-CV-12 (WLS)** |
| OFFICER TERRY WILLIAMS, SHERIFF BUDDY GLASS, SCOTT WORSLEY, and JASON WELLS, | : |
| Defendants. | : |

## RECOMMENDATION

Presently pending in this § 1983 action are motions for summary judgment filed on behalf of the defendants and a Motion to Dismiss filed by the plaintiff. The undersigned notified the plaintiff of the filing of the defendants' motions, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of his receipt of the court's order.

*Background*

The plaintiff filed this action in February 2004, raising challenges to his September 12, 2003, traffic stop and subsequent arrest. Upon initial review of the case, the undersigned recommended that certain claims and defendants be dismissed, and that only plaintiff's "Fourth Amendment claims of unlawful search and arrest" be allowed to go forward. This recommendation was adopted by the district court on August 9, 2004.

At all times relevant to this complaint, defendants Glass and Williams were the Miller County Sheriff and a deputy sheriff respectively. Defendant Worsley was the Chief of Police for

the City of Colquitt and defendant Wells was an officer with this department.  In regard to his claims of unlawful search and arrest, the plaintiff sets forth the following allegations in his complaint and deposition testimony.  On September 12, 2003, the plaintiff was driving a black Nissan pick-up truck and was stopped by City of Colquitt police officer Natalie Dunaway, after having driven the truck to a pawnshop in Colquitt, pawning an item and driving to a local Food Mart.  According to the affidavit testimony of defendant Williams, a "Be on the Lookout for", or "BOLO" warning had been issued by the Early County Sheriff's Department for a black Nissan pick-up potentially carrying stolen tools.

After Officer Dunaway's stop of plaintiff's truck, other officers, including defendant Terry Williams, arrived on the scene.  Plaintiff presented a driver's license bearing the name "Roosevelt Thomas" and subsequently gave one of the officers permission to inspect the tools laying on the front seat of the truck.  Deputy Williams then inspected some bags located in the truck bed.  The officers then asked the plaintiff to drive his truck to the Miller County Sheriff's Department, at which point he thought he was under arrest and no longer free to leave.

At the Sheriff's Department, the plaintiff was questioned by defendant Wells and another officer regarding various burglaries.  On September 15, 2003, the plaintiff signed a waiver of counsel form and was interviewed by defendant Williams.  Based on this interview, arrest warrants were obtained and the plaintiff was arrested.  He was later charged with four (4) counts of burglary and six (6) counts of theft by taking.  He pled guilty to two (2) counts of burglary and one (1) count of theft by taking and is serving his sentence at D. Ray James State Prison.

In his response to the defendants' motions for summary judgment, the plaintiff states that "[t]he main issue of this case is that there was no probable cause which warranted a traffic stop

of plaintiff, which resulted in his illegal arrest and subsequent warrant permitting the search of his motel room."

*Motion to Dismiss*

In his Motion to Dismiss, the plaintiff seeks to dismiss this action without prejudice so that he might pursue post-conviction relief.  The plaintiff filed this motion following the filing of motions for summary judgment by the defendants.  In light of the pendency of dispositive motions that address the underlying merits herein, it is the recommendation of the undersigned that plaintiff's Motion to Dismiss this matter be **DENIED**.

*Motions for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Van T. Junkins & Assoc. v. U.S. Industries, Inc., 736 F.2d 656, 658 (11th Cir. 1984).

As the parties moving for summary judgment, the defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991).  The defendants have supported their respective motions with the affidavits of certain officers and portions of plaintiff's deposition testimony.

*PLRA: § 1997e*

Section 1997e of the Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Eleventh Circuit has interpreted this provision to mean that the PLRA forbids the litigation, during a prisoner plaintiff's period of incarceration, of a lawsuit challenging a prior arrest and seeking damages for emotional injury therefrom, with no allegation of physical injury. Napier v. Preslicka, 314 F.3d 528 (11th Cir. 2002).   In Napier, the court specifically found that "the PLRA should apply to prisoner lawsuits that claim injuries suffered during custodial episodes, even if such custody occurred outside prison walls."  Id. at 533.

Plaintiff's "custodial event" began with his escort to the Miller County Sheriff's Department.  The question of custody turns on whether "a reasonable individual would feel a restraint on his movement such that he would not feel free to leave." Id. at 532.  According to plaintiff's deposition testimony, he was escorted to the Miller County Sheriff's Department, with two (2) police or sheriff's cars in front of him and two (2) following him, and he had been told by defendant Williams that they (the defendants) would hold him for seventy-two (72) hours.  Given these circumstances, a reasonable individual in plaintiff's position would not feel free to leave. Accordingly, plaintiff's claims challenging events taking place while he was in custody, following the search of his vehicle through and including his formal arrest, and for which he seeks damages for emotional injuries only, are barred by § 1997 e.[1]

---

[1] The court notes that § 1997e bars these claims "only during the imprisonment of the plaintiff."  Napier, 314 F.3d at 532.  The court notes as well that to the extent that the

4

*Unlawful search*

Plaintiff also challenges defendant Terry Williams' search of bags in his truck bed, arguing that the items therein were concealed from view and that Deputy Williams needed a search warrant to search the bags. Defendant Williams maintains that the items in plaintiff's truck bed were in plain view and that he had probable cause to search the bags.

Specifically, deputy Williams states in his affidavit that on September 12, 2003, he responded to a "BOLO" that had been issued for a black male driving a black Nissan pickup truck containing potentially stolen tools. Williams had "received information over the police radio . . . that a black Nissan pickup truck had been spotted at TJ Pawn, which is a pawnshop located in Colquitt County." Williams affidavit at ¶ 6. Upon inquiry at the pawnshop, Williams was told that "the driver of a black Nissan pickup truck was using the name 'Roosevelt Thomas III'", but who was also known as Jeff Adams, had pawned certain items. Id. at ¶ 8. Defendant Williams then responded to the scene of the stop of plaintiff's truck, a black Nissan, and was told that the driver had presented identification for "Roosevelt Thomas III", and that an officer had observed some tools in the front of the truck "similar to those stolen in Miller County". Id. at ¶ 11. Williams maintains that he "then personally observed tools which were in plain view in the back of the truck." Id.

Assuming, as alleged by the plaintiff, that defendant Williams actually opened and/or looked into bags in the back of plaintiff's truck, the circumstances set forth in Williams' sworn affidavit testimony establish probable cause for the search of plaintiff's vehicle and the

---

plaintiff argues that nominal and/or punitive damages are not precluded by § 1997e, he makes no claim for such damages.

containers therein.  Probable cause "is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."  Gerstein v. Pugh, 95 S. Ct. 854, 862 (1975). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." .  U.S. v. Ross, 102 S.Ct. 2157 (1982).  "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."  Pennsylvania v. Labron, 116 S. Ct. 2485 (1996).  The plaintiff has failed to rebut defendant Williams' affidavit testimony establishing the existence of probable cause to search his vehicle on the date in question.

*Official capacity claims*

The plaintiff apparently brings suit against defendants Worsley, Chief of Police for the City of Colquitt, and Glass, the Sheriff of Miller County, in their official capacities. Additionally, inasmuch as the defendants named herein were not responsible for the actual stop of plaintiff's truck on the date in question, it appears that plaintiff seeks to hold the named defendants responsible in their official and supervisory capacities regarding his allegations of an illegal stop.

"Section 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Williams v. Bennett, 689 F.2d 1370 (11th Cir. 1983).  This causal connection can be established by proof that the defendants were personally involved in the alleged deprivations of Plaintiff's rights or by proof that the defendants, as supervisors, had notice of the need for improved supervision but failed to take corrective action. Zatler, 802 F.2d

at 401; Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985).  Mere allegations that these defendants are liable under the theory of *respondeat superior* will not suffice to establish liability under section 1983.  McLaughlin v. City of LaGrange, 662 F.2d 1385, 1388 (11th Cir. 1982); Monell v. Dep't. of Social Services, 436 U.S. 658, 691 (1978).

Insofar as Plaintiff brings this action against Williams and Glass in their official capacities as a deputy and Sheriff of Miller County, Plaintiff must allege and establish that the alleged deprivations resulted from a custom or policy set by Miller County.  Hafer v. Melo, 112 S.Ct. 358, 361 (1991); Monell, 436 U.S. at 691.[2]  Plaintiff has neither made such allegations nor brought forth specific facts tending to establish the existence of such a policy or custom.  In regard to the Colquitt Police Chief, "[w]here, as here, a section 1983 plaintiff sues government employees in their official capacities, the suit is in actuality against the governmental entity that the individuals represent."  Farred v. Hicks, 915 F.2d 1530, 1532 (11th Cir. 1990).  In order to hold the City of Colquitt liable, the plaintiff must show that a "governmental 'policy or custom' is the 'moving force' behind the constitutional violation."  Id.   This the plaintiff has clearly failed to do, failing to rebut the defendants' showing that no custom or policy was responsible for any constitutional violation in the claims underlying this lawsuit.

Accordingly, it is the recommendation of the undersigned that the plaintiff's Motion to Dismiss be **DENIED** and that the motions for summary judgment filed by the defendants be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this

---

[2]In Hafer, the Supreme Court clarified its determinations in Kentucky v. Graham, 473 U.S. 159 (1985) and stated that "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a part in the violation of federal law.'" Hafer, 112 S.Ct. at 361.

recommendation with the Honorable W. Louis Sands, Chief United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 25th day of August, 2005.

/s/ *Richard L. Hodge*
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE